**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NY NOURN, | Civil No.    09-cv-2456-BEN (WVG) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION DENYING** |
| | **PETITION FOR WRIT OF HABEAS CORPUS** |
| M. LATTIMORE, | |
| Respondent. | |

**I.     INTRODUCTION**

Petitioner, Ny Nourn, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging her conviction for second degree murder. (See Lodgement No. 1. Vol. 2 at 464.) Petitioner contends that habeas relief is proper based on the following five grounds: (1) The double jeopardy clause was violated when the prosecutor argued facts to which she had been previously acquitted; (2) the prosecutor presented a legally untenable theory of liability; (3) the jury was improperly instructed; (4) there was insufficient evidence to support her conviction; and (5) Petitioner's counsel provided ineffective assistance because he failed to object on double jeopardy grounds or argue the legal untenability of the prosecution's theory at trial.

This Court has reviewed the Petition, Respondent's Answer, Petitioner's Traverse, and all supporting documents. Based on the documents and evidence presented, and for the reasons set forth below, the Court finds that Petitioner is not entitled to the relief requested and recommends that the Petition be **DENIED**.

1

## II.    **<u>FACTUAL BACKGROUND</u>**

This Court gives deference to state court findings of fact and presumes them to be correct. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).   The pertinent facts as found by the state appellate court, and substantially taken from its opinion, are as set forth below. (<u>See</u> Lodgement 6 at 3-8.)

On December 23, 1998, David Stevens' body was found abandoned in the passenger seat of a burning car. An autopsy revealed that Stevens had been fatally shot twice in the head before his body was burned.

The case was unresolved for three years. However, in November 2001, Petitioner Ny Nourn contacted the San Diego Police Department and confessed her role in Stevens' murder. The following description of the events leading up to the murder is from Nourn's transcribed confession.

In August 1998, when Nourn was 17 years old she met Ronald Barker, then a 34-year-old married man with a child, through the Internet. Within days, they developed an intimate relationship.

Nourn's relationship with Barker continued through the fall of 1998. In November 1998, Nourn began working at the Perfect Match dating service. She developed a friendly relationship with her boss, David Stevens. On the evening of December 22, Nourn went on a date with Stevens. They went to his apartment and had sex. After leaving Stevens' apartment, Nourn returned home. When she arrived, she saw Barker's car parked near her house. She nervously parked and approached Barker.

Barker asked Nourn where she had been. At first she said she had been shopping. Barker did not believe her and Nourn admitted that she had "slept with [her] boss." Barker became angry and told her to get out of the car. Nourn said she was sorry and that it would never happen again. She then told Barker that Stevens coaxed her into having sex with him, and changed her story, stating that he had raped her. Barker replied, "I'm gonna kill him," and told Nourn she had been "violated" and was "used goods." He told Nourn to take him to Stevens' apartment so that he could confront him, and Nourn agreed to do so.

On their way to Stevens' apartment, Barker and Nourn stopped and had sex in the back seat of his car. Afterward, Barker suggested that he and Nourn should end their relationship. Nourn begged him not to do so, and he responded that the "[o]nly way you stay with me is if you kill David or I kill David." Nourn replied, "I do anything you say." Barker then stated that he needed to go to his house to get his gun, and Nourn followed him there.

Barker then told Nourn to call Stevens and tell him that she was stranded on the freeway. However, when Nourn called, Stevens did not answer. Barker and Nourn drove to Stevens' apartment.

They planned for Nourn to tell Stevens that her car had broken down and ask him for assistance. Barker would follow in his vehicle and when he flashed his headlights, Nourn would have Stevens pull over. They would tell Stevens that Barker was Nourn's brother.

When they arrived at Stevens' apartment, Nourn called him on the intercom and told him she needed help with her car. When Stevens came out, he and Nourn left in his car and traveled eastbound. Barker followed in his own car. Barker flashed his lights; Nourn told Stevens to pull over. She told Stevens that she thought the person following them was her brother. Nourn walked to Barker's car and he told her to have Stevens follow him. Nourn returned to Stevens' car and told him to follow Barker. They drove to a residential area and then stopped. Nourn introduced Barker to Stevens as her brother. They then all got into Stevens' car, with Barker in the back seat.

Barker directed Stevens to drive, on the pretense of looking for Nourn's car. Nourn did not say much and "just kept to [her]self." Barker then directed Stevens to pull over.

After Stevens pulled over, he asked, "Where's the car?" Barker grabbed Stevens by the neck and pointed the gun at his head. Barker said, "How does it feel to sleep with someone's girlfriend?" Stevens replied "[D]on't do this," and Nourn said, "No, no." Barker twice fatally shot Stevens in the head. Nourn assisted Barker in moving Stevens' car and later setting it on fire with Stevens' body inside.

During the following three years, Barker and Nourn's relationship continued and neither told anyone about Stevens' murder. Nourn stated that she went along with the plan because she thought that Barker would kill her if she did not.

09cv2456

Nourn denied that she wanted to see Stevens hurt or killed. She stated she liked Stevens very much. She believed Barker would have killed her if she refused to participate in his plot to murder Stevens. Nourn admitted Barker had never physically abused her in any way prior to Stevens' murder, although she stated that Barker had slapped her one time on the night Stevens was killed. Nourn asserted that although she knew Barker had a gun and had threatened to kill Stevens, she believed he only intended to "confront" him. She believed Barker's death threats were directed at her, not Stevens. Nourn also recognized that Barker had no idea where Stevens lived and only her assistance led Barker to him. Nourn admitted she was alone with Stevens several times as the plot unfolded. She acknowledged she had several opportunities to stop the murder, but did not warn Stevens or take any actions to prevent it because she was worried about her own safety. At trial, three psychologists testified Nourn suffered from Battered Women's Syndrome before, during and after Stevens' murder. However, one psychologist admitted that at the time of the murder Nourn was not so subjugated by Barker that she did not feel free to defy him by dating Stevens.

### III.   PROCEDURAL BACKGROUND

In 2003, a jury returned a verdict of first degree murder against Ny Nourn and found true a lying in wait special circumstance allegation. (Lodgement 6 at 1.) In May 2004, the California Court of Appeal affirmed Nourn's conviction but reversed the special circumstance finding based on instructional error. (Id.) Nourn filed a writ of habeas corpus which the California Court of Appeal granted in December 2006. (Id.) The court reversed Nourn's conviction for first degree murder based on ineffective assistance of counsel. (Id. at 1-2.)

In November 2007, Nourn was again put on trial on charges of murdering David Stevens and committing arson to his car. (Id.) Prior to trial, the court dismissed a special circumstance lying-in-wait allegation. (Id.) After the close of the prosecution's case, the trial court granted Nourn's motion for acquittal on the first degree murder charge. (Id.) The jury found Nourn guilty of second degree murder and not guilty of arson. (Id.) Nourn was sentenced to 15 years to life. (Id.)

Nourn filed a direct appeal of her conviction in the California Court of Appeal, which upheld her conviction, in a written opinion on April 27, 2009. (Lodgement 6.) Nourn then filed a petition for review in the Supreme Court of California. (Lodgement 7.) The Supreme Court denied the petition

4

09cv2456

without comment. (Lodgement 8.)  Nourn filed her petition for writ of habeas corpus in this Court

pursuant to 28 U.S.C. 2254 on October 28, 2009. (Doc. No. 1.) Respondent answered the petition

January 14, 2010. (Doc. No. 12.) Nourn filed her traverse to the petition February 10, 2010. (Doc. No.

14.)

**IV.   SCOPE OF REVIEW**

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996

Antiterrorism and Effective Death Penalty Act ("AEDPA").  Section 2254(a) sets forth the following

scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an <u>unreasonable determination</u> of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands

that state-court decisions be given the benefit of the doubt.'" <u>Womack v. Del Papa</u>, 497 F.3d 998,

1001 (9th Cir. 2007) (quoting <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)). To obtain federal habeas

relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362,

403 (2000). Under section 2254(d)(1), the Supreme Court has ruled that the "contrary to" clause to

permit a grant of habeas relief "if the state court arrives at a conclusion opposite to that reached by

this Court on a question of law or if the state court decides a case differently than this Court has on

a set of materially indistinguishable facts." <u>Id.</u> at 412-13. The Supreme Court has also interpreted the

"unreasonable application" clause of § 2254(d)(1) to allow a grant of "the writ if the state court

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The Supreme Court has clarified that even an erroneous or incorrect application of clearly established federal law does not support a habeas grant, unless the state court's application was "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8 (2002). Absent citations to Supreme Court precedent, habeas relief is not merited if the state court decision neither contradicts the reasoning nor the result of Supreme Court rulings. Id.

**V.   DISCUSSION**

Petitioner Nourn presents the Court with five claims for habeas relief. She argues that (1) the double jeopardy clause was violated when the prosecutor argued facts to which she had been previously acquitted; (2) the prosecutor presented a legally untenable theory of liability; (3) the jury was improperly instructed; (4) there was insufficient evidence to support a second degree murder conviction; and (5) Petitioner's counsel provided ineffective assistance because he failed to object to the double jeopardy violation or the legally untenable theory.

**A. The Double Jeopardy Clause Was Not Violated When The Prosecutor Argued Facts Which Were Relevant to Both First and Second Degree Murder**

Nourn contends that double jeopardy principles were violated when the prosecution argued facts to which she was acquitted. (Petition, Points and Authorities, at 25.) Nourn is not entitled to habeas relief on this issue because no double jeopardy principles were implicated where the trial

court acquitted Nourn of first degree murder and the prosecution argued a second degree murder theory.

At the close of the prosecution's case, Nourn's counsel moved for the trial court to acquit Nourn of murder under California Penal Code Section 1118.1. The trial court acquitted Nourn of first degree murder only, concluding that, "Ms. Nourn did not believe that Mr. Barker would actually engage in the ultimate act of such enormity as the cold blooded murder that he did." (RT at 224.) Nonetheless, the court allowed a second degree murder charge to stand. (RT at 225.) The trial court reasoned that "a person can be convicted of a second degree murder ... based on an implied malice theory, which does not necessarily require an intent to kill." (RT at 212.) Ms. Nourn's counsel acknowledged that "one of the issues could be: (sic) was she reckless or was she negligent? And that, wherein would be the difference in voluntary manslaughter and second degree murder." (*Id.*) The trial court further clarified that "there could be a basis for an implied malice, even absent intent to kill. If you're inviting somebody out to a threat that you believe is lethal and do that in conscious disregard and so forth ... that could support implied malice." (RT at 225.) The court briefly mused "whether she [Nourn] shared any intent to kill." (RT at 225.) However, the court quickly disposed of its doubt noting that, "I don't need to decide that ... because the concept[s] of implied malice and second degree murder... no longer necessarily require... an intent to kill." (RT at 225.) After the close of all the evidence, the defense renewed its motion for acquittal under California Penal Code Section 1118.1. Nourn's counsel reiterated the argument that "no substantial evidence of malice" had been introduced. (RT at 700.) The trial court disagreed and denied the motion allowing the second degree murder charge to go to the jury. (RT at 700.)

At closing argument, the prosecutor contended that Barker had engaged in cold blooded murder. (RT at 718.) However, the prosecutor clearly explained that Nourn, as an aider and abettor, did not need to share Barker's specific intent to kill, nor did Nourn have that intent. (RT at 718.) Nourn's intent, as correctly described by the prosecutor, merely had to be "to facilitate and aid that murder." (RT at 718.) The prosecutor argued Nourn "had that specific intent to aid and abet Ronald Barker pulling the trigger and killing David Stevens. She didn't have to intend that act herself... to

1   intend that David Stevens die." (RT at 719.) It is this argument that Nourn submits violated her right

2   against double jeopardy.

3       Nourn raised her double jeopardy argument in her state appeal. The Court of Appeal rejected

4   it. (Lodgement 6.) She then filed a petition for review in the California Supreme Court which denied

5   her petition without comment. (Lodgement 8.) The last reasoned state decision which addressed the

6   merits of the claim is the California Court of Appeal's opinion affirming the verdict. (Lodgement 6.)

7   It is to that decision this Court must direct its analysis. Ylst, 501 U.S. at 805-6.

8       The Court of Appeal held that the double jeopardy clause was not violated when the

9   prosecutor argued Nourn was guilty of second degree murder. (Lodgement 6 at 11.) The trial court

10  specifically excluded second degree murder from its ruling acquitting Nourn of first degree murder.

11  (Lodgement 6 at 11.) The appellate court recognized that because "the court explicitly refused to

12  enter judgment on the lesser offense of second degree murder and found that theory of liability

13  remained ... no double jeopardy principles were implicated by trial of the second degree murder

14  charge." (Lodgement 6 at 11.)

15      The appellate court properly identified Smith v. Massachusetts as the relevant case

16  controlling double jeopardy attachment in court issued acquittals. See Smith v. Massachusetts, 543

17  U.S. 462 (2005). While the Smith Court did find a violation of double jeopardy where the trial court

18  reconsidered its unqualified acquittal order, the holding is properly distinguishable here. See id. at

19  474. The appeals court found significant the fact that the trial court's acquittal in Smith, "was without

20  qualification" (Lodgement 6 at 11-12) whereas at Nourn's trial, the trial court specifically limited its

21  acquittal ruling to pertain only to the first degree murder charge. (RT at 224.) The appeals court

22  concluded that "nothing in the Smith decision prohibits a trial court from limiting an acquittal ruling

23  allowing a lesser offense to proceed, as the court did in this case." (Lodgement 6 at 12.)

24      The appellate court neither reached a decision contrary to nor unreasonably applied clearly

25  established law in determining that there was no double jeopardy violation. The Double Jeopardy

26  Clause "protects against a second prosecution for the same offense after acquittal" and "protects

27  the accused from attempts to relitigate the facts underlying a prior acquittal." Brown v. Ohio, 432

28  U.S. 161, 165 (1977). It "prohibits reexamination of a court-decreed acquittal to the same extent it

8

prohibits reexamination of an acquittal by jury verdict." Smith v. Massachusetts, 543 U.S. 462, 467 (2005).   If the acquittal is issued before a conviction, "further proceedings to secure one are impermissible." Id. However, "[t]he trial judge's characterization of his own ruling is not controlling for purposes of double jeopardy, ...[rather the] inquir[y is]... " 'whether the ruling of the [trial] judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564 (1977).)

Nourn contends that the trial court's acquittal meant that she "was found not to have aided and abetted Barker's plan to kill Stevens" and consequently "the People could no longer argue that appellant knew of and intended to assist Barker in any form of murder, whether express or implied, based on a general aider and abettor theory." (Petition, Points and Authorities, at 27.) She further argues that the "Prosecution could not do ... what it did do, [which] was to factually argue that she aided and abetted a premeditated murder for which she was acquitted." (Traverse at 7.) Petitioner argues that akin to Smith, she was "subjected to post acquittal fact finding proceedings going to her guilt or innocence although she had already been acquitted of the very same factual determination." (Traverse at 7 quoting Smith v. Massachusetts, 543 U.S. at 467.)

Petitioner's contentions lack merit. Nourn incorrectly argues that the prosecutor elected to remove second degree malice murder from consideration. (Traverse at 9.) In fact, implied malice was the only malice theory before the jury.(RT at 707-08.) As the Court of Appeal recognized, the Smith acquittal was unqualified, id. at 465, whereas when the trial court ruled on Nourn's motion to acquit, the court specifically carved out second degree murder and lesser included offenses like manslaughter from its order, and granted the motion as to first degree murder only. (RT at 225.) As outlined above, and noted by the Court of Appeal, nothing in Smith v. Massachusetts, limits the trial court's ability to exclude lesser included offenses from its ruling.  543 U.S. 462.

Additionally, the Court of Appeal aptly noted that "nowhere in the court's ruling did it find ... [Nourn] had no knowledge Barker intended to kill Stevens.... [Rather] the court only found ... she [did not] share the same level of premeditation and deliberation [as] Barker." (Lodgement 6 at 13.) The trial court's doubt that Nourn shared any intent to kill was not part of its ruling. As the Court specifically noted, "I don't need to decide that." (RT at 225.) Contrary to Nourn's contentions, the

09cv2456

court's acquittal was not "a conclusive factual determination that the People failed to prove beyond a reasonable doubt that appellant knew and intended to facilitate Barker's willful, deliberate, and premeditated plan to kill Stevens." (Petition, Points and Authorities, at 27.) The court merely ruled that based on the evidence presented, Nourn did not share Barker's premeditation. (RT at 225.) Thus, the court left open the possibility of Nourn's conviction for second degree murder.

Further unlike the facts presented in <u>Smith</u>, where the trial court impermissibly reconsidered its own ruling, here, Nourn argues that it was the prosecutor's actions, not the court's, that violate double jeopardy. However, the prosecution was not barred from arguing that Nourn was guilty of second degree murder. As the trial court specifically ruled, implied malice murder was to "remain before the jury." (RT at 225.) The prosecutor was careful to argue that Nourn was not on trial for first degree premeditated murder. The prosecutor explained that second degree aiding and abetting liability meant that Nourn "had that specific intent to aid and abet Ronald Barker pulling the trigger and killing David Stevens. She didn't have to intend that act herself... to intend that David Stevens die." (RT at 719.) This argument presents a theory of aiding and abetting a second degree implied malice murder. Under the court's first degree acquittal ruling, the prosecution's argument properly presented a second degree murder theory. This did not violate double jeopardy principles unlike <u>Smith v. Massachusetts</u>, because there was no further fact finding regarding first degree murder. <u>See</u> 543 U.S. at 467. Petitioner was acquitted of first degree murder, the prosecution argued a theory of second degree implied malice murder, and consequently no double jeopardy violation occurred. For the reasons stated above, the Court recommends this claim be **DENIED**.

**B. Nourn's Conviction Was Not Based on an Untenable Legal Theory**

Nourn's second ground for habeas relief challenges the legal theory upon which she was convicted. Nourn contends she was convicted on an impermissible theory of law. (Petition, Points and Authorities, at 21.)

On appeal to the state court, Nourn challenged the legal tenability of the prosecution's theory. The California Court of Appeal denied Nourn's appeal. She then filed a petition for review in the California Supreme Court which denied her petition without comment. (Lodgement 8.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's

09cv2456

opinion affirming Nourn's conviction on a second degree implied murder theory. (Lodgement 6.) It

is to that decision this Court must direct its analysis. Ylst, 501 U.S. at 805-06.      On appeal, the state

court affirmed Nourn's conviction for second degree murder, concluding that although Nourn "did

not share [Barker's] premeditation and deliberation[, it] had no impact on her liability as an aider and

abettor to second degree murder." (Id. at 14.) The court found that "Barker's specific intent to kill

is not incompatible with Nourn's conviction for implied malice murder." (Lodgement 6 at 13.)

In its opinion denying Nourn's habeas claim, the Court of Appeal attempted to dissect the

confusing language with which the California Supreme Court defines the requisite mental state of

an aider and abettor. The Court of Appeal explained that "an aider and abettor's liability is not

dependent upon, or affected by, the disposition of the charges against the direct perpetrator."

(Lodgement 6 at 14, quoting People v. Garcia, 28 Cal. 4th 1166, 1173 (2002).) The court clarified that

although the California Supreme Court opined that the "aider and abettor must share the

[perpetrator's] specific intent" the phrase is applied to  mean that the aider and abettor "knows the

full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or

purpose of facilitating the perpetrator's commission of the crime." (Lodgement 6 at 14 quoting

People v. McCoy, 25 Cal. 4th 1111, 1118 (2001).) The court confirmed that "aider and abettor liability

does not require proof of the specific intent that is an element of the underlying offense."

(Lodgement 6 at 14, quoting People v. Mendoza, 18 Cal. 4th 1114, 1123 (1998).) The court specified

that the jury had to find only "the intent to encourage and bring about the conduct that is criminal,

not the specific intent that is an element of the target offense." (Lodgement 6 at 14.) In essence, the

Court of Appeal confirmed that the jury had to find Nourn knowingly helped Ronald Barker kill David

Stevens, not that Nourn wanted to kill David Stevens.

The appellate court also explained why the jury properly found that Nourn had the requisite

mental state to be convicted of second degree murder as an aider and abettor to Barker's plan. The

court reasoned that implied malice arises under two circumstances, either  when the killing reveals

an abandoned and malignant heart, or "when the killing results from an intentional act, the natural

consequences of which are dangerous to life, [and the] act was deliberately performed by a person

who knows that his conduct endangers the life of another and who acts with conscious disregard for

1  life." (Lodgement 6 at 13, quoting <u>People v. Swain</u>, 12 Cal. 4th 593, 600 (1996).) Under the reasoning

2  provided by the Court of Appeal, Nourn was guilty of second degree murder because the jury must

3  have found that Nourn knew that Barker's acts either demonstrated a malignant heart or she

4  consciously disregarded known risks dangerous to human life, and knowing this, she nonetheless

5  aided Barker.

6      Nourn contends that the theory grounding her conviction was untenable because "appellant

7  [Nourn] could not aid and abet a perpetrator who intended to kill on a theory of shared implied

8  malice murder." (Petition, Points and Authorities, at 21.) However, federal courts are bound by a

9  state court's construction of its own penal statutes, and must defer to that interpretation, unless it

10  is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation."

11  <u>Aponte v. Gomez</u>, 993 F.2d 705, 707 (9th Cir. 1993).

12      The appeals court found that Nourn was convicted on a legally tenable theory of law.  Nourn

13  was convicted of  aiding and abetting a second degree murder on an implied malice theory. (<u>See</u>

14  Lodgement No. 1., Vol. 2, at 464). California law permits an aider and abettor to be convicted of

15  second degree murder while the perpetrator was convicted of first degree murder. See <u>People v.</u>

16  <u>Woods</u>, 8 Cal. App. 4th 1570, 1581 (1992.)

17      The California Penal Code defines murder as "the unlawful killing of a human being... with

18  malice aforethought." Cal. Penal Code § 187.  Malice is "implied, when no considerable provocation

19  appears, or when the circumstances attending the killing show an abandoned and malignant heart."

20  Cal. Penal Code § 188. The statute also defines first degree murder, and clarifies that "[a]ll other

21  kinds of murder are of the second degree." Cal. Penal Code § 189. California law holds persons who

22  aid and abet a crime, liable for that crime. <u>See</u> Cal. Penal Code § 31.

23      The California Supreme Court has identified an aider and abettor as a person who, "acting

24  with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of

25  committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids,

26  promotes, encourages or instigates, the commission of the crime." <u>People v. Prettyman</u>, 14 Cal. 4th

27  248, 259 (1996) (citing <u>People v. Beeman</u>, 35 Cal. 3d 547, 561 (1984)). One who aids and abets a

28  specific intent crime must "share the specific intent of the perpetrator."  <u>Beeman</u>, 35 Cal. 3d at 560.

As parsed by the Court of Appeal, noted above, this confusing statement is applied to mean that the aider and abettor must know "the full extent of the perpetrator's criminal purpose and give[] aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." Id. As explained above, Nourn demonstrated the requisite intent and aid to Barker. No Supreme Court law invalidates Petitioner's second degree murder conviction under the theory of aiding and abetting a second degree murder, for which the perpetrator was convicted of a first degree killing. Thus, the theory is neither untenable nor a subterfuge and the state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established Supreme Court law. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403 (2000). The Court recommends this claim be **DENIED**.

**C. The Jury Instructions Did Not Violate Due Process**

In her traverse, Nourn challenges the jury instructions claiming that they lacked "the mens rea elements of aider and abettor liability as to whether Petitioner shared Barker's murderous intent." (Traverse at 5.) Cryptically, Nourn also argues that the trial court's failure to include a natural and probable consequences instruction eliminated a viable theory on which she could have been convicted. (Traverse at 6.) While Nourn's appeals touched on this jury instruction argument, the appeals court did not address Nourn's argument in its written opinion affirming her conviction. (See Lodgement 6.)

The trial court instructed the jury on the requisite mental state to convict Nourn of second degree murder. At the close of trial, the court presented the jury with the instruction that "the people must prove not only that the defendant did the acts charged, but also that she acted with particular intents and mental states. The instruction for each crime and the instructions for aiding and abetting will explain for you the intent and mental states required." (Calcrim 225 (excerpt); RT at 688; CT 346.) The trial court clarified that "as to any crime where the people's theory that Ms. Nourn is guilty in that she aided and abetted Mr. Barker in the commission of the crime, the mental states of specific intent and knowledge must be proved. The specific intent for aiding and abetting and knowledge are explained in the instructions for aiding and abetting." (Calcrim 252(excerpt); RT at 692; CT at 350.) The trial court further instructed the jury that to find Nourn guilty as an aider and

abettor in Stevens' murder they must find the following four elements: "one, the perpetrator ... committed the crime; two, the defendant [Nourn] knew that the perpetrator [Barker] intended to commit the crime; three, that before or during the commission of the crime, the defendant [Nourn] intended to aid and abet the perpetrator [Barker] in committing the crime; ... [a]nd four, the defendant's [Nourn's] words or conduct did, in fact aid and abet the perpetrator's [Barker's] commission of the crime." (Calcrim 401, RT at 705; CT at 373.) The trial court instructed that "[s]omeone aids and abets a crime if ... she knows of the perpetrator's unlawful purpose, and ... she specifically intends to, and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of the crime." (Id.)[1]

To the extent that Nourn challenges the jury instructions issued on California accomplice liability laws, this claim is not properly before the court in a federal habeas proceeding. See 28 U.S.C. § 2254; Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). However, a federal habeas court can overturn a conviction "where the instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" Quigg v. Crist, 616 F.2d 1107, 1111 (9th Cir. 1980) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Further, [an] omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Additionally, the alleged error cannot be judged in isolation. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Rather, it must be considered in the context of the entire trial record and the instructions as a whole. Id.; see also Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993) (finding that the right to present a complete defense does not entitle a defendant to a particular set of jury instructions). Even if there was constitutional error, petitioner must establish prejudice. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). This Court must determine, therefore, whether the aiding and abetting instructions given violated Nourn's due process rights.

---

[1]The court also instructed the jury on malice required for murder. "The people must prove that, one the defendant committed an act that caused the death of another person; and, two, when the defendant acted, she had a state of mind called malice aforethought." (Calcrim 520; RT at 707; CT at 375.) The court explained that "[a] defendant acts with malice or has that state of mind if one, ... she intentionally committed an act; two, the natural consequences of the act were dangerous to human life; three, at the time ... she acted, ... she knew the act was dangerous to human life; and four, ... she deliberately acted with conscious disregard for human life." (Id.) During deliberation the jury asked for clarification regarding the natural consequences described in the implied malice instruction. The court responded "[a]nother way to view the natural consequences of the act were dangerous to human life," is that it is an act having a high probability of death." (CT at 395.)

14

The Ninth Circuit has noted that "[i]nstructions that allow a jury to convict without finding every element of the offense violate the <u>In re Winship</u>, 397 U.S. 358 (1970), requirement that 'every fact necessary to constitute the crime' must be proven beyond a reasonable doubt." <u>Keating v. Hood</u>, 191 F.3d 1053, 1061 (9th Cir. 1999). In such instances, constitutional error is presumed, and the court must determine whether that error was harmless. <u>Id.</u> This is not a <u>Winship</u>-type case, however, because the instructions did not omit any element of aiding and abetting or murder. The California Supreme Court has identified an aider and abettor as follows: an aider and abettor is a person who, "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." <u>People v. Prettyman</u>, 14 Cal. 4th 248, 259 (1996) (citing <u>People v. Beeman</u>, 35 Cal. 3d 547, 561 (1984)). This court must accept the California Supreme Court's identification of the elements of the offense. <u>See Illinois v. Vitale</u>, 447 U.S. 410, 416 (1980); <u>Newton v. Superior Court of California</u>, 803 F.2d 1051, 1058 (9th Cir.1986).

Nourn contends that the jury instructions failed to include the appropriate requisite mental state to convict her of second degree murder. The Ninth Circuit analyzed a similar issue in <u>Willard v. People of State of California</u>, 812 F.2d 461, 463 (9th Cir. 1987). The Ninth Circuit reviewed an aiding and abetting jury instruction held erroneous under state law because it failed to include California's requirement of specific intent. Upon reviewing this instruction, the Ninth Circuit failed to find a violation of due process. The Ninth Circuit concluded that,

> "[D]ue process--independent of state law--does not require that an aiding and abetting charge contain a distinct instruction regarding specific intent. In <u>Nye & Nissen v. United States</u>, 336 U.S. 613 (1949), the Supreme Court upheld a conviction under the federal aiding and abetting statute. The Court found no error in the trial court's charge that one '"who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly,'" <u>Id.</u> at 618, even though the jurors were given no further explanation of the terms involved, <u>see id.</u> at 628, (Murphy, J., dissenting); accord <u>United States v. Rosa</u>, 705 F.2d 1375, 1380-81 (1st Cir.1983). The <u>Nye & Nissen</u> Court was satisfied that the "defendant 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed.' " 336 U.S. at 619 (quoting <u>United States v. Peoni</u>, 100 F.2d 401, 402 (2nd Cir.1938)); accord <u>United States v. Mehrmanesh</u>, 682 F.2d 1303, 1308-09 (9th Cir.1982)." <u>Willard v. People of State of Cal.</u>, 812 F.2d 461, 463 (9th Cir. 1987).

In the present case, Petitioner has not shown that the instruction that neglected "the mens rea elements of aider and abettor liability as to whether Petitioner shared Barker's murderous intent"

so infected the entire trial that the resulting conviction violated her right to due process. See Estelle, 502 U.S. at 72; Traverse at 5. Here, the trial court's jury instructions comported with California aiding and abetting law. See People v. Prettyman, 14 Cal. 4th 248, 259 (1996). The jury instructions properly stated that Nourn had to know of Barker's unlawful purpose to murder Stevens; Nourn must have intended to aid, and actually aid, Barker in that murder. (Calcrim 401(excerpt); RT at 705; CT at 373.)

Furthermore Nourn cannot demonstrate a violation of due process because, as noted by the appellate court, and in detail in the claim below, there was sufficient evidence for the jury to find that Nourn aided and abetted a second degree murder. As the California Court of Appeal found, "the jury could convict Nourn of second degree murder as an aider and abettor based upon evidence [that:] (1) Barker either intended to kill the victim or intended to shoot the victim; (2) Nourn acted to facilitate the commission of the offense; and (3) she did so with knowledge of Barker's purpose and the intent or purpose of committing, encouraging, or facilitating the commission of the offense." (Lodgement 6 at 17.) The appellate court further reasoned Nourn "knew Barker intended to kill Stevens.... When Barker suggested he and Nourn should end their relationship, she begged him, "No, no, please I want to stay with you." (Lodgement 6 at 15.) Nourn agreed to do "anything you say" and Barker instructed "the only way you stay with me is if you kill David or I kill David." (Lodgement 6 at 15.) Barker then announced they must get his gun from his house. (Lodgement 6 at 15.) The appeals court considered this to be "substantial evidence of Nourn's knowledge of Barker's intent to kill Stevens and her liability as an aider and abettor of that crime." Id. Nourn "lead ... [Barker] to Stevens, and lured Stevens out of his home. She also acknowledged she was alone with Stevens for significant periods of time prior to the murder and had numerous opportunities to prevent the crime."(Lodgement 6 at 17.)

Nourn also contends that the jury instructions prejudiced her because the jury was not instructed on the natural and probable consequences theory of aiding and abetting. (See Calcrim 402.) Nourn implicitly argues that had the natural and probable consequences theory been provided to the jury, she may have been found guilty of aiding and abetting an assault, a natural and probable consequence of which, was David Stevens' death. (See Traverse at 5 n.4, 6.) This argument is similarly unavailing.

16

Nourn cannot show that the trial court's failure to give the natural and probable consequences theory violated due process because the jury was instructed on the lesser included offenses of involuntary manslaughter, simple assault, and simple battery. (Calcrim 580, 915, 960; RT at 708-712; CT at 377-381.)  The jury was instructed further that duress was a defense to involuntary manslaughter. (Calcrim 3402.) Despite these instructions, the jury found Nourn guilty of aiding and abetting a second degree murder. The jury rejected the opportunity to absolve Nourn of culpability for Stevens' death by holding her responsible for lesser included offenses. Instead, the jury specifically concluded the evidence proved beyond a reasonable doubt that Nourn was responsible for a second degree murder.

Petitioner is not entitled to federal habeas relief on her claim asserting improper jury instructions. Petitioner has not shown that the alleged "error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." Brecht, 507 U.S. at 637. Rather, the jury was properly instructed as to the elements of aiding and abetting liability. In addition to second degree murder, the jury was also instructed on both lesser included offenses and a duress defense that would have negated Nourn's culpability for Stevens' murder. Nonetheless, the jury rejected this theory. Petitioner cannot demonstrate any violation of due process because the jury declined  to convict Nourn of manslaughter or assault, and similarly rejected the corresponding defense of duress. The Court recommends this claim be **DENIED**.

**D.    There Was Substantial Evidence To Support A Second Degree Murder Conviction**

Nourn contends that there was insufficient evidence for the jury to convict her of second degree murder because she did not share Barker's intent to commit premeditated murder. (Petition, Points and Authorities, at 51.)

On appeal to the state court, Nourn challenged the sufficiency of evidence upon which she was convicted. The California Court of Appeal denied Nourn's appeal. She then filed a petition for review in the California Supreme Court which denied her petition without comment. (Lodgement 8.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's opinion affirming Nourn's conviction on a second degree implied murder theory. (Lodgement 6.) It is to that decision this Court must direct its analysis. Ylst, 501 U.S. at 805-06.

09cv2456

Petitioner claims that there is no substantial evidence to support her second degree murder conviction. Specifically Nourn challenges that "the evidence failed to prove appellant had subjective awareness or conscious disregard for Stevens' life sufficient for a rational trier of fact to find her guilty of implied malice murder." (Petition, Points and Authorities, at 51.)

The Court of Appeal denied this claim, holding:

> A "conviction of second degree murder, based upon a theory of implied malice, requires proof that the defendant acted with a conscious disregard of a known danger to human life. Thus the jury could convict Nourn of second degree murder as an aider and abettor based upon evidence (1) Barker either intended to kill the victim or intended to shoot the victim; (2) Nourn acted to facilitate the commission of the offense; and (3) she did so with knowledge of Barker's purpose and the intent or purpose of committing, encouraging, or facilitating the commission of the offense. ...There is substantial evidence, based upon her statements to the police, that Nourn knew Barker intended to kill Stevens and participated in his plan. Barker was only able to complete the crime with Nourn's assistance. She led him to Stevens, and lured Stevens out of his home. She also acknowledged she was alone with Stevens for significant periods of time prior to the murder and had numerous opportunities to prevent the crime. However Nourn failed to warn Stevens or take any other action to prevent the murder. She deliberately acted in conscious disregard for Stevens's (sic) life and was intimately involved in facilitating, encouraging and instigating each state of the events leading up to the murder. Her actions thus provide substantial evidence she aided the murder of Stevens." (Lodgement 6 at 16-17.)

The appellate court also concluded that the three elements of aider and abettor liability, "(a)the direct perpetrator's actus reus, (b) the aider and abettor's mens rea (knowledge of the perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends) and (c) the aider and abettor's actus reus" were met because Nourn "knew Barker intended to kill Stevens, and aided and abetted in Barker's commission of that crime." (Id. at 14-15.) The court implicitly noted Nourn's mental state of implied malice and knowledge that Barker wanted to kill Stevens by pointing specifically to Nourn's actions of begging Barker to not end the relationship, Barker's clear statement that to keep their relationship alive "either you [Nourn] kill David or I kill David, and Nourn's response that "I do anything you say." (Id. at 15.) Finally, Barker indicated that he needed to go to his house for his gun. (Id.) The appeals court considered this to be "substantial evidence of Nourn's knowledge of Barker's intent to kill Stevens and her liability as an aider and abettor of that crime." Id.

09cv2456

In a sufficiency of the evidence claim, the court must determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 290 (1992); Jackson v. Virginia, 443 U.S. 307, 324 (1979); Mikes v. Borg, 947 F.2d 353, 356 (9th Cir. 1991). In making this determination, the Court is not authorized "to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 318-19. The court must view the evidence in the light most favorable to the prosecution, and must presume the trier of fact resolved conflicting evidence in favor of the prosecution. Wright v. West, 505 U.S. at 296-97; Jackson v. Virginia, 443 U.S. at 319, 326; Taylor v. Stainer, 31 F.3d 907, 908-09 (9th Cir. 1994). If the evidence was insufficient to support the verdict, the remedy is to grant an unconditional writ of habeas corpus, barring retrial of Petitioner. See Burks v. United States, 437 U.S. 1, 18 (1978); Greene v. Massey, 437 U.S. 19, 24 (1978).

Under California law, "[s]econd degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." People v. Knoller, 41 Cal.4th 139, 151 (2007); People v. Nieto Benitez, 4 Cal.4th 91, 102 (1992). "Malice, for the purpose of defining murder, may be express or implied." Nieto Benitez, 4 Cal.4th at 102; Knoller, 41 Cal.4th at 151; see Cal. Penal Code § 188. Malice "is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Cal. Penal Code § 188. When it is established that a killing was the result of an intentional act committed with express or implied malice, "no other mental state need be shown to establish the mental state as malice aforethought." Id.

"A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages, or instigates the commission of the crime." People v. Richardson, 43 Cal.4th 959, 1023 (2008); People v. Cooper, 53 Cal.3d 1158, 1164 (1991).

19

The intent to render such aid must be formed prior to or during the commission of the crime. Cooper, 53 Cal.3d at 1164. A person may be convicted of murder based on his status as an aider and abettor. Spivey v. Rocha, 194 F.3d 971, 976-77 (9th Cir.1999); People v. Woods, 8 Cal.App.4th 1570, 1583-84(1992).

The testimony of a single witness is sufficient to uphold a conviction, Bruce v. Terhune, 376 F.3d 950, 957-58 (2004), and a federal court in a habeas corpus proceeding cannot redetermine the credibility of witnesses whom the federal court has not observed. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Rather, "[t]he reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

Detective James Tefet testified that he interviewed Nourn once she had contacted the police department about the murder. (RT at 130.) The second interview between Nourn and Detective Tefet was recorded. (RT at 131.) The recorded interview revealed Nourn's verison of the events surrounding the murder. (RT 130-131; CT at 225-317.) Nourn admited that Barker was waiting for her when she returned from Stevens' apartment on the night of December 22, 1998. (CT at 280.) Barker questioned her about where she had been, and once she claimed Stevens raped her, Barker threatened to end the relationship. (CT at 260.) Previously the same evening, Stevens had told Nourn he wanted an exclusive relationship with her. (CT at 257.) Nonetheless, Nourn begged Barker "no please don't do this... I love you." (CT at 260.) Barker immediately began raging "I'm going to kill him [Stevens]." (CT at 262.) Barker appeared to reconsider his threats, and Nourn persisted, begging Barker "no please I want to stay with you." (CT at 263.)

Barker told Nourn the "only way you stay with me is if you kill David or I kill David." (CT at 263.) Nourn confirmed "I do anything you say." (CT at 264.) Barker and Nourn then traveled to Barker's house, after Nourn asked him if he had a gun. (CT at 264.)

09cv2456

Nourn and Stevens then proceeded to Stevens apartment. (CT at 264.) Nourn admitted that she was alone with Stevens in his car after she and Barker traveled back to his apartment. (CT at 264.) Nourn followed Barker's devised plan and asked Stevens to pull over when Barker "blinked" his lights. (CT at 266).  Nourn introduced Stevens to Barker as her brother.(CT at 267.)  When Barker pulled out the gun after entering the car, Nourn only then asked Barker "what are you doing." (CT at 269.) Only after the murder did Nourn confess to Barker that Stevens did not rape her. (CT at 262.)

The detective asked Nourn "Did you ever tell Ron [Barker] to kill him?" Nourn responded "No, I just told him, you do what you have to do. But then again I don't want you to kill him." (CT at 300.)

Detective Tefet also recorded calls between Barker and Nourn. (RT at 146.) On the calls Barker threatened Nourn that he would go to the police to confess to the murder and implicate Nourn. (CT at 324.) Barker continuously asserted that Nourn would be responsible for Stevens' murder. (CT at 324-325.) Barker told Nourn "you want me to do it... You ask me to do this job... now you change your story Ny." (CT at 325.)

Detective John Young testified that he spoke with Nourn after the murder because her number was on Stevens' answering machine. (RT at 174.) They talked for "no more than two minutes" and Nourn only asserted that "she was an employee at Perfect Match and she worked for David Stevens." (RT at 175.) Detective Young described her tone of voice as "calm, [and] nonchalant." (RT at 176.) Nourn mentioned nothing about the murder. (RT at 174-75.)

Here, as the California Court of Appeal found, there was ample evidence from which the jury could determine Petitioner possessed the requisite implied malice and knowledge of Barker's plan to convict her of aiding and abetting a second degree murder. This evidence is more than sufficient to support Petitioner's second degree murder conviction. Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir.1998); People v. Gonzales, 87 Cal. App. 4th 1, 10-11 (2001). Nourn knew Barker had a gun in his possession and wanted Stevens dead. Furthermore, Nourn's own statements to Barker illustrate that she

agreed to "do anything" Barker demanded to keep their relationship alive, which implicitly meant Stevens had to die. There was ample evidence from which the jury could find that Nourn intended to aid Barker, knowing Barker's purpose, and consequently acted in reckless disregard of Stevens' life. Accordingly, the appeals court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. The Court recommends this claim be **DENIED**.

### E. Petitioner's Counsel Was Not Ineffective

Nourn contends that her counsel provided ineffective assistance entitling her to habeas relief for two reasons: first, that he failed to object to prosecution's argument that allegedly violated the due process clause (Petition, Points and Authorities, at 31); and second, because he failed to object to a purported legally untenable theory of liability. (Petition at 8.)

The Court of Appeal declined to consider Petitioner's ineffective assistance of counsel claim on appeal. It noted that "because we conclude that no double jeopardy principles were implicated in this case, we need not reach Nourn's contention her counsel rendered ineffective assistance of counsel by failing to make a double jeopardy argument at trial." (Lodgement 6 at 12 n.4.) Nourn then filed a petition for review in the California Supreme Court which denied her petition without comment. (Lodgement 8.) The last reasoned state decision which addressed the merits of the claim is the California Court of Appeal's opinion affirming the trial judgment. (Lodgement 6.) It is to that decision that this Court must direct its analysis. Ylst, 501 U.S. at 805-6.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. The right to effective assistance counsel

09cv2456

applies to the performance of both retained and appointed counsel without distinction. See Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).

To prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, she must establish that her counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, she must establish that she was prejudiced by her counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Williams (Terry) v. Taylor, 529 U.S. 362, 404-08 (2000). It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

Here, the record reflects that Petitioner's counsel thoughtfully considered the prosecutions theory of liability, carefully reviewed jury instructions, and diligently presented appropriate motions like the motion to acquit petitioner of murder. Petitioner does not present any evidence that her counsel made errors. Nor does Petitioner show that her counsel was unreasonable in making decisions. Thus, Petitioner has not overcome the strong presumption that counsel's conduct fell within reasonable professional norms.

Because Nourn cannot identify any conduct by which her counsel failed to meet reasonable professional norms, and the Court of Appeal properly found that there were no issues raised to which counsel should have objected on double jeopardy grounds the Court recommends that this claim be **DENIED.**

**VI.     CONCLUSION AND RECOMMENDATION**

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>July 16, 2010</u>, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>July 30, 2010</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 14, 2010

_____
Hon. William V. Gallo
U.S. Magistrate Judge

09cv2456