1

2    FILED

3    '10 SEP 16  AM 11: 21

4    CLERK, U.S. DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA

5    BY:                    
                            DEPUTY

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

| 11 | NY NOURN, | | CASE NO. 09-cv-2456 BEN (WVG) |
|---|---|---|---|
| 12 | | Petitioner, | ORDER ADOPTING REPORT AND |
| | vs. | | RECOMMENDATION AND |
| 13 | | | DENYING WRIT OF HABEAS |
| | M. LATTIMORE, | | CORPUS UNDER 28 U.S.C. § 2254 |
| 14 | | | |
| 15 | | Respondent. | |

16                          **INTRODUCTION**

17         Petitioner Ny Nourn, a state inmate proceeding pro se, filed a Petition for Writ of Habeas

18  Corpus under 28 U.S.C. § 2254 (the "Petition"), alleging (1) the double jeopardy clause was violated

19  when the prosecutor argued facts to which she had previously been acquitted; (2) the prosecutor

20  presented a legally untenable theory of liability; (3) the jury was improperly instructed; (4) there was

21  insufficient evidence to support her conviction; and (5) Petitioner's counsel provided ineffective

22  assistance because he failed to object to the double jeopardy violation or argue the legal untenability

23  of the prosecution's theory at trial. (Docket No. 1.) Respondent filed an Answer, and Petitioner filed

24  a Traverse. (Docket Nos. 12, 14.)

25         On June 14, 2010, Magistrate Judge William V. Gallo issued a Report and Recommendation,

26  recommending that the Petition be denied. (Docket No. 15.) On July 12, 2010, Petitioner filed an

27  Objection to the Report and Recommendation. (Docket No. 16.) For the reasons stated below, the

28  Court **ADOPTS** the Report and Recommendation and **DENIES** Petitioner's Petition for Writ of

1   Habeas Corpus under 28 U.S.C. § 2254.

2                                **FACTUAL BACKGROUND**

3          A summary of the pertinent facts as found by the state appellate court (Lodgement 6 at 3-8) is

4   as follows:

5          On December 23, 1998, David Stevens' body was found in a burning car.  An autopsy revealed

6   that Stevens had been fatally shot twice in the head before his body was burned.  The case was

7   unresolved for three years.  However, in November 2001, Petitioner contacted the San Diego Police

8   Department and confessed to her role in the murder.

9          As part of her confession, Petitioner stated the following: In August 1998, when she was 17

10  years old, Petitioner met Ronald Barker through the internet.  They quickly developed an intimate

11  relationship and continued that relationship at all relevant times herein. In November 1998, however,

12  Petitioner began working at the Perfect Match dating service.  While working at Perfect Match,

13  Petitioner developed an intimate relationship with her boss, David Stevens.

14         On December 22, 1998, after returning home from a date with Stevens, Petitioner encountered

15  Barker.  Barker asked where Petitioner had been.  At first, Petitioner said she had been shopping, but

16  then admitted that she had "slept with [her] boss." Petitioner then told Barker that Stevens had coaxed

17  her into having sex with him, but then changed her story and said Stevens had raped her.  Barker

18  replied, "I'm gonna kill him," and told Petitioner to take him to Stevens' apartment so that he could

19  confront him.  Petitioner agreed.

20         On their way to Stevens' apartment, Barker and Petitioner had sex in the back seat of his car.

21  Barker suggested that he and Petitioner end their relationship.  Petitioner begged him not to do so, to

22  which Barker responded, "[o]nly way you stay with me is if you kill David or I kill David." Petitioner

23  replied, "I do anything you say."  Barker then said he needed to go to his house to get his gun.

24  Petitioner followed him there.

25         Barker told Petitioner to call Stevens and tell him she was stranded on the freeway.  Petitioner

26  agreed.  However, when Petitioner called, Stevens did not answer.  Therefore, Barker and Petitioner

27  drove to Stevens' apartment with the plan of telling Stevens that Petitioner's car had broken down and

28  she needed him to follow her to her car.  Barker would pretend to be Petitioner's brother.

When they arrived at Stevens' apartment, Petitioner called him on the intercom and told him the story. The three of them then drove to a residential area. When Stevens pulled over and asked "Where's the car," Barker grabbed Stevens by the neck and pointed the gun at his head. Barker said, "How does it feel to sleep with someone's girlfriend?" Stevens replied, "[D]on't do this," and Petitioner said "No, no." Barker then fatally shot Stevens twice in the head. Petitioner assisted Barker in moving Stevens' car and later setting it on fire with Stevens' body inside. For the following three years, Barker and Petitioner continued their relationship.

Petitioner stated she was afraid Barker would kill her if she did not go along with the plan. Petitioner stated she liked Stevens very much and denied wanting to see him hurt or killed. Petitioner believed Barker only intended to "confront" Stevens. Petitioner admitted Barker never physically abused her prior to Stevens' murder, although she said Barker slapped her on the night of the murder. Petitioner also admitted Barker did not know where Stevens lived and only her assistance led Barker to him. Petitioner admitted she was alone with Stevens several times as the plot unfolded and had several opportunities to stop the murder or warn Stevens, but did not do so. At trial, three psychologists testified that Petitioner suffered from Battered Women's Syndrome before, during and after the murder. However, one psychologist admitted that, at the time of the murder, Petitioner was not so subjugated by Barker that she did not feel free to defy him by dating Stevens.

In her Objection to the Report and Recommendation, Petitioner does not contest the above factual summary, other than to contend that on the night of the murder she did not have consensual sex with Barker; she was raped. (Obj., 2, 6.) Absent clear and convincing contrary evidence, however, the factual determinations of a state court are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1). Petitioner has not presented clear and convincing evidence that the state court's factual determinations are incorrect. In fact, Petitioner admits that, at the time of her confession, she did not tell the police that Baker raped her on the night of the murder; rather, she indicated that the sex was consensual. (Obj., 10.) Accordingly, the Court adopts the state appellate court's factual findings.

## PROCEDURAL BACKGROUND

In 2003, a jury returned a guilty verdict of first degree murder against Petitioner and found true a special circumstances lying-in-wait allegation. The state appellate court ultimately reversed the first

1   degree murder conviction based on ineffective assistance of counsel and reversed the special

2   circumstance finding based on instructional error.

3         In November 2007, Petitioner was again tried on charges of murder and arson. Prior to trial,

4   the court dismissed the special circumstances lying-in-wait allegation. After the close of the

5   prosecution's case, the trial court granted Petitioner's motion for acquittal on the first degree murder

6   charge. The jury found Petitioner guilty of second degree murder and not guilty of arson. Petitioner

7   was sentenced to 15 years to life. Petitioner has exhausted her state court remedies.

8                                 **DISCUSSION**

9         Petitioner asserts five grounds for relief: (1) the double jeopardy clause was violated when the

10   prosecutor argued facts to which she had previously been acquitted; (2) the prosecutor presented a

11   legally untenable theory of liability; (3) the jury was improperly instructed; (4) there was insufficient

12   evidence to support her conviction; and (5) Petitioner's counsel provided ineffective assistance

13   because he failed to object to the double jeopardy violation or argue the legal untenability of the

14   prosecution's theory at trial.

15         As correctly outlined in the Report and Recommendation, federal habeas relief may only be

16   granted when state court proceedings "(1) resulted in a decision that was contrary to, or involved an

17   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

18   the United States; or (2) resulted in a decision that was based on an unreasonable determination of the

19   facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The

20   Supreme Court has clarified that even an erroneous or incorrect application of clearly established

21   federal law does not support a habeas grant, unless the state court's application was "objectively

22   unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Where there is no reasoned decision

23   from the state's highest court, the Court "looks through" to the underlying appellate court decision.

24   *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court opinion does not

25   "furnish a basis for its reasoning," federal habeas courts must conduct an independent review.

26   *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538

27   U.S. at 75-76).

28

09cv2456

1    **I.    DOUBLE JEOPARDY**

2        Petitioner claims that double jeopardy principles were violated when the prosecution argued

3    facts to which she was acquitted. The Report and Recommendation rejected this claim, finding that

4    although the trial court granted Petitioner's motion to acquit, the trial court specifically carved out

5    from its order second degree murder and lesser included offenses like manslaughter; the order granting

6    the motion to acquit was limited to first degree murder only. The Report and Recommendation,

7    therefore, concluded the Court of Appeal did not err in finding that double jeopardy principles were

8    not violated.

9        It is well-established that a party objecting to a Report and Recommendation must cite specific

10   instances of error in the Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); *United States v.*

11   *Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) ("Section 636(b)(1) does not countenance a form of

12   generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a

13   party's objection to a magistrate judge's report be specific and particularized, as the statute directs the

14   district court to review only *those portions* of the report or *specified* proposed findings or

15   recommendations *to which objection is made*.") (internal citations and quotations omitted) (emphasis

16   in the original). As the Fourth Circuit stated,

17               [A] party must object to the finding or recommendation on that issue
                 with sufficient specificity so as reasonably to alert the district court of
18               the true ground for the objection. . . To conclude otherwise would
                 defeat the purpose of requiring objections. We would be permitting a
19               party to appeal any issue that was before the magistrate judge,
                 regardless of the nature and scope of objections made to the magistrate
20               judge's report. Either the district court would then have to review
                 every issue in the magistrate judge's proposed findings and
21               recommendations or courts of appeals would be required to review
                 issues that the district court never considered. In either case, judicial
22               resources would be wasted and the district court's effectiveness based
                 on help from magistrate judges would be undermined.

23

24   *Id.* at 622; *see also* Fed. R. Civ. P. 72(b)(2) (requiring objecting party to file "specific written

25   objections to the proposed findings and recommendations").

26        Here, Petitioner does not make any specific objections to the Report and

27   Recommendation's finding on double jeopardy. As Petitioner does not identify the portions of the

28   Report and Recommendation that purportedly misapply the law to facts or fail to consider the

- 5 -

1   significance of Plaintiff's facts, the Court overrules Plaintiff's objection. Accordingly, the Court

2   adopts the finding in the Report and Recommendation and denies Petitioner's double jeopardy

3   claim.

4   **II.    UNTENABLE LEGAL THEORY**

5        Petitioner next claims her conviction for second degree murder is premised on an

6   impermissible theory of law. Specifically, Petitioner claims a second degree murder conviction cannot

7   be based on a charge of aiding and abetting a person convicted of first degree murder since the

8   requisite intent between first and second degree murder is different. The Report and Recommendation

9   rejected this claim, noting that although an aider and abettor must share the intent of the perpetrator,

10  the aider and ab ettor need only know of the perpetrator's criminal purpose and give aid or

11  encouragement with the intent of facilitating the perpetrator's commission of the crime. (Report, 13.)

12  The jury found that Petitioner demonstrated the requisite intent and aid to Barker. Additionally, the

13  Report and Recommendation noted that no Supreme Court law demonstrates that a second degree

14  murder conviction cannot rest on aiding and abetting a second degree murder, for which the perpetrator

15  was convicted of first degree murder. Accordingly, the Report and Recommendation found that the

16  Court of Appeal's denial of Petitioner's claim was neither contrary to, nor an unreasonable application

17  of, clearly established Supreme Court law.

18       Petitioner objects to this finding, arguing she was young at the time of the murder, was acting

19  under duress, grew up in a culture that required woman to be subservient to men, and the Battered

20  Woman's Syndrome negates malice. (Obj., p. 6-11.) Petitioner does not cite authority supporting

21  these arguments or otherwise showing that these facts, even if true, demonstrate that a second degree

22  murder conviction cannot rest on aiding and abetting a second degree murder, for which the perpetrator

23  was convicted of first degree murder. To the extent Petitioner argues that the prosecution was

24  unnecessarily "harsh to her," Petitioner fails to cite support for this argument or to cite legal authority

25  showing habeas relief is proper based thereon. To the extent Petitioner's arguments relate to the jury's

26  factual findings, those arguments likewise fail, as detailed below.

27       Accordingly, the Court adopts the well-reasoned analysis set forth in the Report and

28  Recommendation and denies Petitioner's claim.

09cv2456

### III.    JURY INSTRUCTIONS

Petitioner next claims habeas relief should be granted because the jury instructions lacked "the mens rea elements of aider and abettor liability as to whether Petitioner shared Barker's murderous intent." (Traverse, 5; Obj., 13.)

As outlined in the Report and Recommendation, however, the trial court did instruct the jury on the mental state necessary to convict Petitioner of second degree murder.  (Report, 13-14.) Specifically, the trial court instructed, "someone aids and abets a crime if. . . she knows of the perpetrator's unlawful purpose, and. . . she specifically intends to, and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of the crime." (CALCRIM 401, RT at 705; CT at 373.)  The trial court also instructed the jury on the malice required for second degree murder: "[a] defendant acts with malice or has that state of mind if, one,. . . she intentionally committed an act; two, the natural consequences of the act were dangerous to human life; three, at the time. . . she acted. . . she knew the act was dangerous to human life; and four,. . . she deliberately acted with conscious disregard for human life." (CALCRIM 520; RT at 707; CT at 375).

A federal habeas court may overturn a conviction "where the instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Quigg v. Crist*, 616 F.2d 1107, 111 (9th Cir. 1980) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)).  Where an instruction omits a required element of the offense, the Ninth Circuit has recognized that habeas relief may be proper. *Keating v. Hood*, 191 F.3d 1053, 1061 (9th Cir. 1999).  That situation is not present here.  As found by the Report and Recommendation, the jury instruction properly stated that Petitioner had to know of Barker's unlawful purpose to murder Stevens, and Petitioner must have intended to aid, and actually did aid, Barker in that purpose. (Report, 16, citing CALCRIM 401 (excerpt); RT at 705; CT at 373.) Accordingly, Petitioner's claim that the jury was not properly instructed on intent lacks merit. Therefore, the Court adopts the Report and Recommendation's well-reasoned finding that the aiding and abetting jury instructions did not violate Petitioner's due process rights.  To the extent Petitioner argues there was insufficient evidence for the jury to convict her of the charges, that argument likewise lacks merit, as detailed below.

09cv2456

## IV. JURY'S FINDINGS OF FACT

Petitioner claims there was insufficient evidence for the jury to convict her of second degree murder. The state appellate court denied this claim, finding that based on the Petitioner's statements to the police, there was substantial evidence that Petitioner knew Barker intended to kill Stevens and participated in his plan. Additionally, Barker was only able to complete the crime with Petitioner's assistance, and Petitioner lured Stevens out of his home and led him to Barker. Petitioner also acknowledged she had numerous opportunities to prevent the crime; however, she failed to warn Stevens or take other preventive actions. Thus, there was sufficient evidence for the jury to convict Petitioner of second degree murder.

In a sufficiency of evidence claim, a federal habeas court must determine whether "no rational trier of fact could [have found] guilt beyond a reasonable doubt." *Wright v. West*, 505 U.S. 277, 290 (1992). The Court must view all evidence in the light most favorable to the prosecution, and must presume the trier of fact resolved conflicting evidence in favor of the prosecution. *Wright*, 505 U.S. at 296-97. The testimony of a single witness is sufficient to uphold a conviction, *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004), and a federal habeas court cannot redetermine the credibility of witnesses whom the court has not observed. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Rather, "[t]he reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

The Report and Recommendation sets forth a thorough and detailed analysis of the evidence that supports the jury's verdict. (Report, 20-21.) In her Objection, Petitioner contends this evidence is still not sufficient because the jury failed to account for her cultural background which allegedly requires her to be subservient to men, and failed to fully account for her Battered Woman's Syndrome. (Obj., 6-17.) However, Petitioner fails to cite authority showing that such factors, even if true, supercede all other evidence weighing in favor of conviction, as Petitioner contends. After conducting a de novo review, the Court adopts the well-reasoned analysis set forth by the Magistrate Judge and finds that ample evidence supports Petitioner's conviction. Accordingly, the Court denies Petitioner's

1 | claim.

2 | **V.    ASSISTANCE OF COUNSEL**

3 | Petitioner claims her counsel rendered ineffective assistance on two grounds: (1) her counsel
4 | failed to object during trial on the grounds that double jeopardy principles were violated, and (2) her
5 | counsel failed to object to the use of an allegedly untenable theory of liability. Because the Court finds
6 | that the principles of double jeopardy were not violated and the theory of liability was not legally
7 | untenable, the Court need not address Petitioner's claim. Nevertheless, the Court notes that the Report
8 | and Recommendation conducted a thorough analysis under *Strickland v. Washington*, 466 U.S. 668
9 | (1984) and concluded that Petitioner was not denied effective assistance of counsel. In her Objection,
10 | Petitioner did not object to this finding. For this additional reason, a de novo review of Petitioner's
11 | claim is not necessary.   28 U.S.C. § 636(b)(1).   Rather, the Court adopts the Report and
12 | Recommendation and denies Petitioner's claim for ineffective assistance of counsel.

13 | **CONCLUSION**

14 | For the reasons set forth above, the Court ADOPTS the Report and Recommendation in its
15 | entirety and DENIES Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254.

16 | **IT IS SO ORDERED.**

17 | Date: September **5**, 2010

Hon. Roger T. Benitez
United States District Court Judge

09cv2456